1

HONORABLE RONALD B. LEIGHTON

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

8

9      SHARRIE YATES,                           CASE NO. 3:20−cv−05082−RBL

                       Plaintiff,               ORDER ON DEFENDANT WFSE'S
10          v.                                  MOTION TO DISMISS

11     WASHINGTON FEDERATION OF
       STATE EMPLOYEES, AMERICAN
12     FEDERATION OF STATES, COUNTY
       AND MUNICIPAL EMPLOYEES,
13     COUNCIL 28 AFL-CIO, a labor
       organization; et al.,

14
                       Defendants.
15

16                               **INTRODUCTION**

17         THIS MATTER is before the Court on Defendant Washington Federation of State

18     Employees' (WFSE) Motion to Dismiss. Dkt. # 17. Plaintiff Sharrie Yates, a state employee,

19     sued WFSE for forging her electronic signature on a form authorizing Yates's employer to

20     withdraw union dues from her paychecks. Yates also asserts claims against Governor Jay Inslee

21     and Healthcare Authority Director Sue Birch in their official capacities (collectively the "State")

22     under the theory that Defendants' system for authorizing dues withdrawals is constitutionally

23     deficient. WFSE now moves to dismiss Yates's § 1983 claims on the merits and for failure to

24

1  allege state action by the union, a private entity. WFSE further argues that Yates lacks standing

2  to obtain prospective relief and that the Court should decline to exercise supplemental

3  jurisdiction over her remaining state law claims. For the following reasons, the Court GRANTS

4  WFSE's Motion in part and DENIES it in part.

5  **BACKGROUND**

6  On June 27, 2018, the Supreme Court held that public sector employers could not

7  withhold wages to pay union dues without the employee's consent. *Janus v. AFSCME Council*

8  *31*, 138 S.Ct. 2448 (2018). The State of Washington responded by protecting the right of

9  employees to abstain from union activities. RCW 41.80.050. Consistent with this right, public

10 sector employers can deduct union dues from an employee's wages only "[u]pon authorization of

11 [the] employee," RCW 41.80.100(1), a rule implemented by Section 40 of the CBA between

12 WFSE and the State. Complaint, Dkt. # 1, at 8. It is an unfair labor practice for an employer or

13 union to restrain or coerce employees in the exercise of their right to decline participation in a

14 union. RCW 41.80.110. The Public Employee Relations Commission is empowered to address

15 and remedy unfair labor practices. RCW 41.56.160.

16 WFSE is the largest exclusive bargaining representative for state employees in

17 Washington. Yates, an employee at the Washington State Healthcare Authority (HCA),

18 previously paid dues to WFSE. However, on October 11, 2018, Yates provided the HCA's

19 payroll department with her written resignation from union membership and objection to union

20 dues. The payroll department informed Yates that she could not halt her payment of dues

21 because she had electronically signed an authorization form on June 21, 2018. This authorization

22 committed Yates to paying union dues to WFSE for the year and could only be nullified during a

23 10-day window at the end of the yearly period.

24

ORDER ON DEFENDANT WFSE'S MOTION TO
DISMISS - 2

1    Yates alleges that she never signed this authorization form or visited WFSE's website on

2    June 21, 2018. Complaint, Dkt. # 1, at 4. Yates informed WFSE of this but received no

3    substantive response. *Id.* at 5. WFSE eventually allowed Yates to withdraw from the union in

4    June 2019 but did not refund the dues that had been withdrawn from her paychecks since

5    October 2018. *Id.*

6    On January 30, 2020, Yates filed this lawsuit, which focuses on WFSE allegedly forging

7    Yates's signature on its authorization form. Yates alleges four claims against Defendants—two

8    federal law claims under 42 U.S.C. § 1983 and two state law claims. Yates's first § 1983 claim

9    alleges that Defendants, "acting in concert and under color of law," violated her First and

10   Fourteenth Amendment rights by withdrawing union dues from her paychecks based on a forged

11   signature. Complaint at 6. Yates alleges that WFSE purposely forged her signature and that the

12   State relied on that forgery and failed to verify it. *Id.* Yates also claims that "Defendants

13   collectively set up and operated a system designed to avoid accountability which permitted and

14   encouraged the violation of the constitutional rights of state employees." *Id.*

15   Yates's second § 1983 claim alleges First and Fourteenth Amendment violations based

16   on the lack of "necessary procedural safeguards" in the new union dues collection scheme. *Id.* at

17   7. Basically, Yates alleges that the lack of such safeguards means RCW 41.80.100 and Article 40

18   of the CBA allowed the State to rely on a forged signature to collect Yates's union dues,

19   facilitating a violation of her rights. *Id.* Finally, Yates also alleges two state law claims: one for

20   willful withholding of wages under RCW 49.52.050 and one for outrage. *Id.* at 8.

21   Yates requests that the Court reimburse her union dues with interest, award damages for

22   her emotional distress, and grant punitive and statutory damages. *Id.* at 10-11. Yates also asks for

23   a declaratory judgment that the scheme whereby the State relies on union representations for

24

1  withdrawing union dues is unconstitutional and an injunction preventing Defendants from

2  utilizing the scheme in the future. *Id*. at 11.

3  **DISCUSSION**

4       WFSE first argues that Yates's § 1983 claims must be dismissed on several bases, but the

5  Court need only address the argument that the claims fail to allege state action by WFSE.

6  Second, WFSE contends that Yates's requested prospective relief fails to present a live case or

7  controversy. Finally, if the Court dismisses Yates's § 1983 claims, WFSE argues that the Court

8  should decline to exercise supplemental jurisdiction over Yates's remaining state law claims.

9  **1.     Legal Standards**

10       WFSE asserts its Motion under Rule 12(b)(1) and 12(b)(6). "A complaint must be

11  dismissed under Fed. R. Civ. P. 12(b)(1) if the action: (1) does not arise under the Constitution,

12  laws, or treaties of the United States, or does not fall within one of the other enumerated

13  categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the

14  meaning of the Constitution; or (3) is not one described by any jurisdictional statute." *United*

15  *Transp. Union v. Burlington N. Santa Fe R. Co.*, No. C06-5441 RBL, 2007 WL 26761, at *2

16  (W.D. Wash. Jan. 2, 2007), *aff'd*, 528 F.3d 674 (9th Cir. 2008). The plaintiff bears the burden of

17  proving the existence of subject matter jurisdiction. *Stock West, Inc. v. Confederated Tribes*, 873

18  F.2d 1221, 1225 (9th Cir. 1989).

19       In a "factual attack" on jurisdiction, which is what WFSE asserts here, the court is not

20  restricted to the allegations in the complaint and may consider evidence outside it. *Safe Air for*

21  *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Further, "[n]o presumptive truthfulness

22  attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude

23

24

1    the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill Pub. Co. v.*

2    *Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

3            Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable

4    legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri*

5    *v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege

6    facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662,

7    678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual

8    content that allows the court to draw the reasonable inference that the defendant is liable for the

9    misconduct alleged." *Id*. Although the court must accept as true the Complaint's well-pled facts,

10   conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper

11   12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007);

12   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). On a 12(b)(6) motion, "a

13   district court should grant leave to amend even if no request to amend the pleading was made,

14   unless it determines that the pleading could not possibly be cured by the allegation of other

15   facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

16   **2.      State Action under § 1983**

17           "To establish that a defendant is liable for a claim under 42 U.S.C. § 1983 a plaintiff must

18   show '(1) that the conduct complained of was committed by a person acting under color of state

19   law; and (2) that the conduct deprived the plaintiff of a constitutional right.'" *Peschel v. City of*

20   *Missoula*, 686 F. Supp. 2d 1092, 1099 (D. Mont. 2009) (internal quotation omitted) (quoting

21   *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). However, "[m]ost rights

22   secured by the Constitution are protected only against infringement by governments." *Ohno v.*

23   *Yasuma*, 723 F.3d 984, 993 (9th Cir. 2013) (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922,

24

ORDER ON DEFENDANT WFSE'S MOTION TO
DISMISS - 5

1    936-37 (1982)). Therefore, to state a § 1983 claim against a private entity like WFSE, the

2    plaintiff must establish that it engaged in "state action" for which the government can fairly be

3    blamed.[1] *Id*. at 994.

4          "State action may be found if, though only if, there is such a close nexus between the

5    State and the challenged action that seemingly private behavior may be fairly treated as that of

6    the State itself." *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 955 (9th Cir. 2008)

7    (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)

8    (internal quotation omitted)). Determining whether such a nexus exists is a malleable inquiry

9    with no single decisive condition. *Brentwood*, 531 U.S. at 295-96.

10         In *Lugar*, the Supreme Court devised a two-prong test to determine whether private

11   action can be fairly attributed to the state. "The first prong asks whether the claimed

12   constitutional deprivation resulted from 'the exercise of some right or privilege created by the

13   State or by a rule of conduct imposed by the state or by a person for whom the State is

14   responsible.'" *Ohno*, 723 F.3d at 994 (quoting *Lugar*, 457 U.S. at 939). "The second prong

15   determines whether the party charged with the deprivation could be described in all fairness as a

16   state actor." *Id*. (quoting *Lugar*, 457 U.S. at 939). "Both elements under *Lugar* must be met for

17   there to be state action." *Collins v. Womancare*, 878 F.2d 1145, 1151 (9th Cir. 1989).

18         The parties mainly dispute whether the alleged actions of WFSE were undertaken

19   consistent with state law or in violation of it and whether that distinction is decisive for the state

20   action test. *Lugar* itself is an excellent guide on this topic. Lugar, a truck stop operator, had been

21

22   _____

[1] While § 1983 only creates liability for "persons," the Supreme Court has held that the statute
23   covers "legal as well as natural persons." *Monell v. Dep't of Soc. Servs. of City of New York*, 436
     U.S. 658, 683, 690 (1978) (analyzing § 1 of the Civil Rights Act of 1871, 17 Stat. 13, the
24   precursor of § 1983).

ORDER ON DEFENDANT WFSE'S MOTION TO
DISMISS - 6

1    in debt to the defendant, an oil company. *Lugar*, 457 U.S. at 924. To secure Lugar's property, the

2    oil company utilized a prejudgment attachment procedure that only required an allegation that

3    the debtor "was disposing of or might dispose of [the creditor's] property." *Id*. The clerk issued a

4    writ of attachment and the sheriff executed it. *Id*. at 924-25.

5         Lugar asserted two § 1983 claims for due process violations, but there was "considerable

6    confusion throughout the litigation on the question whether Lugar's ultimate claim of

7    unconstitutional deprivation was directed at the Virginia statute itself or only at its erroneous

8    application to him." *Id*. at 940. One of the claims alleged that the oil company violated the Due

9    Process Clause by depriving Lugar of his property through "unlawful" acts. *Id*. This could not

10   support a § 1983 claim because "invoke[ing] [a] statute without the grounds to do so could in no

11   way be attributed to a state rule or a state decision." *Id*.; *see also Collins*, 878 F.2d at 1153

12   ("[Plaintiffs'] challenge to the citizen's arrests based on a delegation by statute argument fails

13   because their claim depends upon the violation of California's citizen's arrest statute.").

14        However, the Court concluded that the second due process claim challenged the state

15   statute as procedurally defective and did not rely on the oil company's misconduct. *Lugar*, 457

16   U.S. at 941. As Lugar's counsel explained it, "[t]he claim is that the action as taken, even if it

17   were just line by line in accordance with Virginia law—whether or not they did it right, the claim

18   is that it was in violation of Lugar's constitutional rights." *Id*. at 941 n.22; *see also, e.g., Georgia*

19   *v. McCollum*, 505 U.S. 42, 51, 55 (1992) (criminal defendant who used peremptory challenges in

20   racially discriminatory way exercised a right "established by a provision of state law" but

21   violated "the constitutional mandate of race neutrality"). The Court thus held that both prongs of

22   the state action test were satisfied because "the procedural scheme created by the statute

23   obviously is the product of state action" and "a private party's joint participation with state

24

ORDER ON DEFENDANT WFSE'S MOTION TO
DISMISS - 7

1 | officials in the seizure of disputed property is sufficient to characterize that party as a 'state

2 | actor' for purposes of the Fourteenth Amendment." *Id*. at 941-42.

3 | Like *Lugar*, Yates alleges two § 1983 Fourteenth Amendment Due Process claims (with a

4 | First Amendment twist) that are unclear and inconsistent about the source of the constitutional

5 | deprivation. However, unlike *Lugar*, no reading of Yates's Complaint supports a claim in which

6 | WFSE complied with state law. The very heart of Yates's lawsuit is that WFSE allegedly *forged*

7 | her signature—an act that Yates admits would be illegal. Opposition, Dkt. # 25, at 7.

8 | "[P]rocedural due process rules are shaped by the risk of error inherent in the truth-

9 | finding process," but due process claims can vary. *Carey v. Piphus*, 435 U.S. 247, 259 (1978)

10 | (quoting *Mathews v. Eldridge*, 424 U.S. 319, 344 (1976)). As *Lugar* demonstrates, claims can be

11 | premised on a defendant's exploitation of an undemanding procedure or their intentional misuse

12 | of that procedure. The former is compatible with state action under § 1983 while the latter is not.

13 | Here, Yates's challenge to RCW 41.80.100 based on WFSE's alleged forgery cannot logically

14 | support the former type of claim; the statute's defect would have to come from enabling its own

15 | subversion, not from facilitating mistakes. Yates's claims therefore cannot survive if WFSE's

16 | actions were "line by line in accordance with [Washington] law," which means she cannot

17 | satisfy prong-one of the state action test. *Lugar*, 457 U.S. at 941 n.22.

18 | Yates insists that, while WFSE's forgery may have violated other laws, the union

19 | nonetheless complied with RCW 41.80.100's procedural requirements for authorizing dues

20 | collection by presenting a signature to the State. But for Yates to be correct, the statute would

21 | have to permit unions to forge employees' signatures. It clearly does not. RCW 41.80.100

22 | requires unions to present the "authorization of an employee" to the State, with the word "of"

23 | indicating "origin or derivation." MERIAM-WEBSTER, https://www.merriam-webster.com/

24 |

ORDER ON DEFENDANT WFSE'S MOTION TO
DISMISS - 8

1   dictionary/of (last visited June 8, 2020). Insofar as RCW 41.80.100 creates a "right or privilege"

2   of unions to initiate dues collections, that right only extends to authentic signatures derived from

3   employees themselves. *Lugar*, 457 U.S. at 939. Indeed, RCW 41.80.110(2) makes it an unfair

4   labor practice to coerce employees into abdicating their right to abstain from union activities. If

5   WFSE forged Yates's signature, it acted "contrary to the relevant policy articulated by the State."

6   *Collins*, 878 F.2d at 1152 (quoting *Lugar*, 457 U.S. at 940).

7         Yates also argues that WFSE's forgery was state action because the State impermissibly

8   encouraged it "by allowing a system in which the Union provides all information regarding a

9   public-employees [sic] authorization to deduct dues." Opposition, Dkt. # 25. It is true that joint

10  action with government parties can transform wrongful private action into state action. *See*

11  *Collins*, 878 F.2d at 1154; *Howerton v. Gabica*, 708 F.2d 380, 384 (9th Cir. 1983). But Yates

12  does not allege that the State knowingly participated in WFSE's misconduct.  *See, e.g., Dennis v.*

13  *Sparks*, 449 U.S. 24, 27 (1980) (state action where private parties conspired with judge);

14  *Howerton*, 708 F.2d at 384 (state action where police facilitated illegal eviction); *Harris v. City*

15  *of Roseburg*, 664 F.2d 1121, 1127 (9th Cir. 1981) (state action where sheriff assisted in

16  repossession). Instead, she claims that the State passed a statute with insufficient safeguards

17  against its own violation and unknowingly accepted an allegedly forged signature. This is not the

18  kind of government "aid" that courts have required to constitute state action by private parties.

19  Yates's § 1983 claims against WFSE fail as a matter of law.

20  **3.      Standing to Seek Prospective Relief**

21        "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each

22  form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (internal

23  quotation omitted). "Standing requires proof (1) that the plaintiff suffered an injury in fact that is

24

ORDER ON DEFENDANT WFSE'S MOTION TO
DISMISS - 9

1    'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical;' (2) of a

2    causal connection between that injury and the complained-of conduct; and (3) that a favorable

3    decision will likely redress the alleged injury." *Rynearson v. Ferguson*, 355 F. Supp. 3d 964, 968

4    (W.D. Wash. 2019) (quoting *Alaska Right to Life Political Action Comm. v. Feldman*, 504 F.3d

5    840, 848 (9th Cir. 2007)).

6        "A plaintiff may challenge the prospective operation of a statute that presents a realistic

7    and impending threat of direct injury." *Davis*, 554 U.S. at 734 (citing *Babbitt v. Farm Workers*,

8    442 U.S. 289, 298 (1979)). "Past wrongs, though insufficient by themselves to grant standing,

9    are 'evidence bearing on whether there is a real and immediate threat of repeated injury.'"

10    *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *City of Los*

11    *Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). To determine if the potential repeated injury is

12    similar to the past one, courts "must be careful not to employ too narrow or technical an

13    approach. Rather, [courts] must examine the questions realistically[,] . . . reject the temptation to

14    parse too finely, and consider instead the context of the inquiry." *Id*. (quoting *Armstrong v.*

15    *Davis*, 275 F.3d 849, 867 (9th Cir. 2001)).

16        WFSE argues that any future harm to Yates is too speculative to support prospective

17    injunctive relief because Yates does not allege a union policy of forging signatures and, to date,

18    she is the only member who has accused WFSE of forgery. Kunze Dec., Dkt. # 14 at 4. WFSE

19    also points out that it has a detailed protocol for electronically enrolling union members, with an

20    online form that must be fully completed, a confirmation email, and a week-long period during

21    which incoming members can inform the union of any error. *Id*. at 2-4 & Exs. 7-9. WFSE has

22    even created a special alert that notifies the union if anyone tries to re-enroll Yates in the future.

23    *Id*. at 4. Finally, WFSE asserts that Yates cannot seek to enjoin Article 40 of the CBA because its

24

1    current form went into effect after Yates's deductions were terminated in June 2019. *Id*. at 2 &

2    Ex. 6.

3        Yates responds that WFSE's alleged abuse of the union dues collection system, which

4    relies solely on the union's representations, stands to harm her by undermining her trust in the

5    union itself. *See Davidson*, 889 F.3d at 969-70 (holding that a consumer who purchased a

6    misleadingly labeled product in the past has standing because she will be unable to trust the

7    product's labeling in the future). Essentially, Yates contends that the ongoing lack of State

8    verification and involvement in the system creates a likelihood of repeated abuse.

9        The Court agrees with WFSE that Yates lacks standing to seek prospective relief

10   enjoining the operation of RCW 41.80.100 and CBA Article 40. Yates presents no evidence to

11   contradict WFSE's showing that its procedures make unauthorized withdrawals very unlikely,

12   especially in Yates's case. The fact that Yates encountered an isolated instance of misconduct or

13   error in the past does not mean she is at heightened risk of another similar experience.

14       Yates's comparison to *Davidson* is unpersuasive. The plaintiff in *Davidson* did not allege

15   that a single product was falsely labeled but that an entire *line* of products was. 889 F.3d at 962.

16   This supported the court's conclusion that the plaintiff could no longer trust the product's

17   advertising in general. *Id*. at 969-70. Here, in contrast, Yates has not alleged a systemic problem

18   with WFSE's procedures that would undermine the union's trustworthiness. Instead, her claim

19   relies on the lack of independent verification by the State, which does not itself indicate

20   pervasive misconduct by WFSE. Yates's request for prospective relief against WFSE is

21   accordingly dismissed.

22

23

24

ORDER ON DEFENDANT WFSE'S MOTION TO
DISMISS - 11

**4.     State Law Claims**

Under 28 U.S.C. § 1367(a), a district court with original jurisdiction over at least one claim in a dispute has "supplemental jurisdiction over all other claims that are so related [that they] form part of the same case or controversy under Article III." However, a court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." § 1367(c)(3). WFSE argues that the Court should dismiss Yates's two state law claims against it because her § 1983 claims against the union are untenable.

But while Yates's § 1983 claims against WFSE have been dismissed for failure to allege state action, her § 1983 claims against the State remain and provide the Court with original jurisdiction.[2] Yates's state law claims against WFSE for outrage and violation of RCW 49.52.050 arising from the alleged forgery are closely related to her claims against the State. Because federal law claims still remain in the case, the Court will not dismiss Yates's state law claims.

//

//

//

//

//

---

[2] Although Yates's § 1983 claims are against all Defendants collectively, her allegations against each are specific. For example, her First Amendment claim alleges, "The State and the HCA relies on WFSE to identify individuals who are members of the union, and by failing to independently verify employees' wishes, the State and HCA fail to adequately protect the First and Fourteenth Amendment rights of their employees." Complaint, Dkt. # 1, at 6. Although the Court anticipates the State will raise many of the same substantive arguments as WFSE against Yates's § 1983 claims, these defendant-specific bases of liability prevent the Court from addressing her claims as they relate to the State.

1

**CONCLUSION**

2      WFSE's Motion to Dismiss is GRANTED in part and DENIED in part. Yates's § 1983

3   claims against WFSE are DISMISSED without leave to amend. Yates's request for prospective

4   injunctive relief is DISMISSED.

5      IT IS SO ORDERED.

6

7      Dated this 12th day of June, 2020.

8

9      _____

10     Ronald B. Leighton
       United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24